**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **JOSEPHINE KALIPENI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 25-cv-3470 (GMH)** |
| | ) | |
| **FAMILY VALUES AT WORK,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Josephine Kalipeni, the former Executive Director of Defendant Family Values at Work (or "FVAW"), alleges that Defendant FVAW violated the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*, by discriminating against her because of her race, national origin, and sexual orientation and retaliating against her for engaging in protected activity. Defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim under Rule 12(b)(6).[1] The discussion below finds that (1) the Court has subject matter jurisdiction over this action; (2) Plaintiff has sufficiently established personal jurisdiction over Defendant as to her discrimination claims (which comprise a disparate treatment claim and a hostile work environment claim) but not yet over her retaliation claim, which will be the subject of jurisdictional discovery; and (3) Plaintiff's allegations state a claim for disparate

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are: (1) Plaintiff's Amended Complaint, ECF No. 9; (2) Defendant's motion to dismiss and its attachments, ECF Nos. 15 through 15-3; (3) Plaintiff's opposition to Defendant's motion to dismiss and its attachments, ECF Nos. 16 through 16-5; and (4) Defendant's reply, ECF No. 17. The page numbers cited herein are those assigned by the Court's CM/ECF system.

treatment relating to her discharge and for a hostile work environment.  Accordingly, Defendant's motion will be denied as to the discrimination claims and denied without prejudice as to the retaliation claim.[2]

## I.    BACKGROUND[3]

Family Values at Work is a Wisconsin corporation organized under Section 501(c)(3) of the Internal Revenue Code to "promote the health and well-being of low-income children and workers by educating the public on the positive impact of work/family benefits and family values at work" and by making distributions to other 501(c)(3) organizations.  ECF No. 9, ¶ 4; ECF No. 15-2 at 2, 5 (Defendant's Articles of Incorporation).[4]  Defendant maintains an office in Washington, D.C., and in Milwaukee, Wisconsin.  *See* ECF No. 9, ¶ 4; ECF No. 15-2 at 1, 4, 6 (Articles of Incorporation).[5]  Plaintiff, a Black immigrant from Malawi who "identifies as a

---

[2] Plaintiff's free-standing constructive discharge claim, which she has disavowed, *see* Section I, *infra*, will be dismissed.  As noted below, however, Plaintiff still relies on constructive discharge as "a theory of adverse employment action that amplifies her statutory discrimination and retaliation claims."  ECF No. 16 at 19.

[3] Defendant moves to dismiss this case under three subsections of Rule 12 of the Federal Rules of Civil Procedure.  Under Rule 12(b)(6), the court is "limited to considering information within 'the "four corners of the complaint, any documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies,"' as well as 'facts of which the Court may take judicial notice.'"  *Ortega v. Mayorkas*, No. 23-cv-2417, 2024 WL 4119390, at *3 (D.D.C. Sep. 9, 2024) (quoting *Brown v. Gov't of D.C.*, 390 F. Supp. 3d 114, 122 (D.D.C. 2019)).  However, under Rule 12(b)(1) and 12(b)(2), a court may consider facts outside the pleadings to resolve the question of its jurisdiction.  *See, e.g.*, *Xie v. Sklover & Co. LLC*, 260 F. Supp. 3d 30, 37 (D.D.C. 2017) (noting that where a motion to dismiss challenges the court's personal jurisdiction over a defendant, the judge may consider "affidavits and other relevant matter to assist in determining jurisdictional facts" (quoting *Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 26 (D.D.C. 2012))); *Machie v. Chandonnet*, 140 F. Supp. 3d 4, 9 (D.D.C. 2015) (noting that where a motion to dismiss challenges the court's subject matter jurisdiction over a claim, the judge may "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case" (quoting *Scolaro v. D.C. Bd. of Elections & Ethics,* 104 F. Supp. 2d 18, 22 (D.D.C. 2000))).  Both parties have submitted additional materials, including affidavits, with their briefs to aid the Court in determining the jurisdictional questions.  *See* ECF Nos. 15-2, 15-3, 16-1, 16-2, 16-3, 16-4, 16-5.  The recitation in this section makes clear when information was taken from materials outside the Amended Complaint or judicially noticed facts.

[4] The Court takes judicial notice of Defendant's Articles of Incorporation.  *See, e.g.*, *Doe J.D. v. Broglio*, No. 25-cv-6289, 2025 WL 2988639, at *3 (N.D. Cal. Oct. 23, 2025) (stating that "[c]ourts have taken judicial notice of articles of incorporation as undisputed matters of public record" and collecting cases).

[5] In her Amended Complaint, Plaintiff claims that Family Values at Work "maintained its *only* office in Washington[,] D.C."  ECF No. 9, ¶ 4 (emphasis added).  However, the exhibits she submits with her opposition to the motion to

member of the LGBTQIA community," was hired as Deputy Director in 2020 and promoted to Executive Director in 2021, becoming the first Black woman to occupy that position. ECF No. 9, ¶¶ 5, 12. According to the Amended Complaint, she "performed work while being physically located in Defendant's D.C. Office and remotely from her Maryland home." *Id.*, ¶ 7. She asserts she "had meetings with partners and attended several events, including lobbying in D.C. and out of Defendant's D.C. office." *Id.* An affidavit from Liana Cassar, Defendant's current Interim Executive Director, does not contradict those allegations but confirms that no staff members "regularly appeared and conducted business on behalf" of Defendant from the D.C. Office, which is, "[f]rom time to time . . . used by individuals affiliated with the organization who find themselves in the downtown D.C. area on FVAW-related business."[6] ECF No. 15-3, ¶¶ 3, 6. The Amended Complaint also alleges that Plaintiff "carried out her duties under the supervision of and in coordination with staff, Board members, and partners, many of whom were based in the District of Columbia." ECF No. 9, ¶ 7. Cassar's declaration clarifies that, during the relevant period, "no

---

dismiss reflect that the company had two offices: one in Milwaukee and one in Washington, D.C. *See* ECF No. 16-1 (listing offices in both locations); ECF No. 16-5, ¶ 6 (asserting that the company "included budget line items for rent for two offices," one of which was in Washington, D.C.). "[A]n allegation is not 'well-pleaded' if it is contradicted by other evidence put forth by the plaintiff." *Freedom Mortg. Corp. v. Bullock*, No. 19-cv-664, 2025 WL 3078314, at *5 (E.D.N.Y. Nov. 4, 2025); *see also Sparrow v. Interbay Funding, L.L.C.*, No. 05-cv-581, 2006 WL 2844254, at *3 (D.D.C. Sep. 26, 2006) (allegations contradicted by other material in the complaint "are not 'well-pleaded' and need not be accepted as true."). Accordingly, the Court need not and does not credit Plaintiff's assertion that the company's one and only office was in Washington, D.C.

[6] Plaintiff's assertion in her declaration that Defendant "regularly employs individuals who work in or report to its D.C. office," ECF No. 16-5, ¶ 4, does *not* say that any employees routinely worked in or reported to its D.C. office. As such, it does not suggest that the D.C. office was the base of those employees' operations; it merely indicates that, like Plaintiff, other employees would utilize the D.C. office. And, as noted below in Section III.B.3, Plaintiff herself identifies only two instances when she was in the D.C. office.

Board Member was based in the District of Columbia and so no one supervised or directed [Plaintiff's] work from the District of Columbia."  ECF No. 15-3, ¶ 4.

It appears that Plaintiff's work situation began to deteriorate in 2024.  She asserts that on April 16, 2024, eight directors sent a letter to the Board of Directors demanding Plaintiff's removal based on allegations of "mismanagement of funds, embezzlement, creating a toxic work environment[,] and a conflict of interest" arising from her service on the boards of other organizations; the letter also claimed she was "violating immigration laws."[7]  ECF No. 9, ¶¶ 8, 16. The Board declined to remove Plaintiff but commenced an "independent investigation" that "involved . . . D.C. based staff members" including Samantha Chavin-Grant and Suzette Gardner.[8] *Id.*, ¶ 9.  In May 2024, the same group of directors who had sent the April 16 letter sent another one alleging additional "conflicts."  *Id.*, ¶ 10.

Plaintiff asserts that during the investigation, she "experienced distressing harassment" by directors and staff, including directors not showing up for meetings and, in one instance, "refus[ing] to report on their work" and demanding Plaintiff resign.  *Id.*, ¶ 11.  She also alleges that a request in May 2024 to unionize by the staff (which resulted in a charge filed with the National Labor Relations Board ("NLRB") that was later withdrawn) and a separate request to unionize by the directors were "an additional strategy to push [her] out of her position as Executive Director."  *Id.*, ¶ 14.  Plaintiff states that staff members Chavin-Grant and Gardner "violated [Plaintiff's] privacy and breached confidentiality by disclosing the incidents involving [Plaintiff]"

---

[7] It appears from the record that the eight "directors" who sent the letter to the Board were not members of the Board of Directors, but rather, employees of Defendant.  *See* ECF No. 17 at 8 (identifying the directors who wrote the letters as lacking authority to hire or fire Plaintiff).

[8] It is unclear from the record whether Chavin-Grant and Gardner were "directors" like the eight who sent the letter to the Board, or a different category of employee.  Plaintiff consistently characterizes them as "staff" rather than "directors."  *See* ECF No. 9, ¶ 9; ECF No. 16 at 5.  Defendant identifies them as "two directors (who are not board members . . . )."  ECF No. 17 at 8.  At this early stage in the litigation, their precise positions are not material.

4

to "funders, national partners[,] and state allies," some of whom were based in D.C., and "implying that [Plaintiff] and the Board were anti-union," which resulted in harm to Plaintiff's "professional and personal reputation in D.C."  *Id.*, ¶ 15.  Additionally, Plaintiff learned in June 2024 that U.S. Immigration and Customs Enforcement had received a tip that she was violating immigration laws, which "mirrored the complaint from the April 16, 2024, letter to the Board."  *Id.*, ¶ 16.  She "informed the Board of this situation and the escalation," but the Board "did not address [her] concerns."  *Id.*

The Board had a meeting on July 3, 2024, to review the findings of the investigation.  *Id.*, ¶ 17.  It appears that the investigation found the claims against Plaintiff to be unfounded.  *See id.* However, the Board nonetheless "concluded that the environment was too tenuous for [Plaintiff] to be able to lead and move forward" and, rejecting her requests for it "to take action to address the behavior of the directors and staff undermining her authority," offered her "three untenable options: resign, termination, or mutual separation."  *Id.*, ¶¶ 17–18.  Plaintiff "chose to resign due to the toxic and untenable work environment which made it impossible for her to stay employed." *Id.*, ¶ 48.  Plaintiff claims that because of the alleged harassment and discrimination, she suffered "health issues" and impacts on her "employability," asserting that "none of [FVAW's D.C.]-based partners will hire her."  *Id.*, ¶¶ 19–20.

Plaintiff filed this action in D.C. Superior Court on July 2, 2025.  *See* ECF No. 1-2 at 1. Defendant removed the case to this Court on September 29, 2025, on the basis of diversity jurisdiction, alleging that Plaintiff is a citizen of Maryland and Defendant a citizen of Wisconsin and that the amount in controversy exceeds $75,000.  *See* ECF No. 1 at 1–3.  Plaintiff later filed an Amended Complaint, which pleads three "counts":  Count I alleges disparate treatment and a hostile work environment based on Plaintiff's race, national origin, and sexual orientation in

violation of the DCHRA; Count II alleges retaliation in violation of the DCHRA; and Count III alleges wrongful constructive discharge. *See* ECF No. 9 at 8–13. In response to Defendant's motion to dismiss, *see* ECF No. 15, Plaintiff acknowledges that the constructive discharge count "is not a separate cause of action" but rather "a theory of adverse employment action that amplifies her statutory discrimination and retaliation claims," ECF No. 16 at 19.

## II.    LEGAL STANDARDS

As noted, Defendant's motion to dismiss proceeds under three subsections of Rule 12(b) of the Federal Rules of Civil Procedure: Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction; Rule 12(b)(2), which governs motions to dismiss for lack of personal jurisdiction; and Rule 12(b)(6), which governs motions to dismiss for failure to state a claim.

### A.    Rule 12(b)(1)

A motion under Rule 12(b)(1) "presents a threshold challenge to the court's [subject matter] jurisdiction" over the case before it. *Thomas v. Wash. Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 81 (D.D.C. 2018) (quoting *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)). The "plaintiff bears the burden of establishing" subject matter jurisdiction. *Norton v. United States*, No. 21-cv-724, 2025 WL 2970475, at *5 (D.D.C. Oct. 22, 2025) (quoting *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007)). Where its power to hear a case is at issue, a court will subject a complaint to "closer scrutiny" than on a motion to dismiss for failure to state a claim and is not limited to consideration of the allegations contained in that complaint. *See, e.g.*, *Walsh v. Comey*, 118 F. Supp. 3d 22, 25 (D.D.C. 2015). Indeed, where a party mounts a factual challenge—that is, it attacks the "underlying facts contained in the complaint" rather than merely the allegations included on the face of the complaint—the court "*must* weigh the allegations of the complaint and evidence outside the pleadings in order to 'satisfy itself as to the existence of its

6

power to hear the case.'" *Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 162 (D.D.C. 2003) (emphasis added) (quoting *Loughlin v. United States*, 230 F. Supp. 2d 26, 35 (D.D.C. 2002)); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001) ("A district court 'may' consult evidence to decide a Rule 12(b)(1) motion in contrast with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, where it may not. It 'must' do so if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction.").

### B.      Rule 12(b)(2)

Rule 12(b)(2) is the vehicle by which a defendant challenges a federal court's personal jurisdiction over it. Fed. R. Civ. P. 12(b)(2). The plaintiff must make a *prima facie* showing that the court has personal jurisdiction over a defendant by pleading "specific facts providing a basis for personal jurisdiction." *Walsh v. Hagee*, 900 F. Supp. 2d 51, 56 (D.D.C. 2012) (quoting *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 (D.D.C. 2010)). However, because a Rule 12(b)(2) motion raises a jurisdictional challenge, the court "may consider documents outside the pleadings" in determining the question. *Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 161 (D.D.C. 2003). Any disputed issue of fact should be resolved in favor of the plaintiff. *Moldauer v. Constellation Brands Inc.*, 87 F. Supp. 3d 148, 152 (D.D.C. 2015), *aff'd*, No. 15-5103, 2019 WL 3955850 (D.C. Cir. Aug. 7, 2019). However, a court need not accept a plaintiff's "conclusory statements and intimations" or "bare allegation[s]." *GTE New Media v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) (quoting *First Chi. Int'l v. United Exchange Co.*, 836 F.2d 1378–79

(D.C. Cir. 1988))); *see also, e.g.*, *Leitner-Wise v. Clark*, No. 18-cv-771, 2018 WL 6787999, at *3 (D.D.C. Dec. 26, 2018) ("Conclusory statements and bare allegations are insufficient.").

### C.    Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified); *see* Fed. R. Civ. P. 12(b)(6).  The court must accept as true the well-pleaded factual allegations, *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), construe those allegations "in the light most favorable to the plaintiff[]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016), and draw all "reasonable inferences" in favor of the plaintiff, *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016).  However, allegations contradicted by other material in the complaint "are not 'well-pleaded' and need not be accepted as true." *Sparrow*, 2006 WL 2844254, at *3.  Although the plaintiff need not make "detailed factual allegations," the complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At bottom, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.    DISCUSSION

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–

8

31 (2007). Accordingly, the Court addresses those two issues first before proceeding to Defendant's arguments that Plaintiff has failed to state a claim on which this Court can grant relief.

### A.      Subject Matter Jurisdiction

The branch of Defendant's motion to dismiss targeting the Court's subject matter jurisdiction begins with the DCHRA's statement of purpose, which is "to secure an end *in the District of Columbia* to discrimination." ECF No. 15 at 3 (emphasis in original) (quoting D.C. Code § 2-1401.01 (formerly D.C. Code § 1-2501)). For decades, the D.C. Court of Appeals has interpreted that as a limit on the subject matter jurisdiction of D.C.'s local courts. *See Matthews v. Automated Bus. Systs. & Servs., Inc.*, 558 A.2d 1175, 1178–80 (D.C. 1989) (analyzing whether discriminatory acts allegedly took place in the District of Columbia to determine whether the court had subject matter jurisdiction over the claim); *see also, e.g.*, *Monteilh v. AFSCME*, 982 A.2d 301, 304 (D.C. 2009) (similar). Judges on this court have followed suit and looked to a DCHRA claim's connections to the District of Columbia to determine whether this federal court has subject matter jurisdiction over it. *See, e.g.*, *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284 (D.D.C. 2012) ("[T]he most important factor in determining whether a court has subject matter jurisdiction over a DCHRA claim is not whether the plaintiff was actually employed in the District of Columbia, but whether the alleged discriminatory acts occurred in the District." (citation modified) (quoting *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 104 (D.D.C. 2009))); *Quarles v. Gen. Inv. & Dev. Co.,* 260 F. Supp. 2d 1, 20 (D.D.C. 2003) (same); *see also, e.g.*, *Higgs v. Cava Grp.*, 239 F. Supp. 3d 257, 261 (D.D.C. 2017) ("Because the Court finds that Plaintiff has alleged that these decisions relating to her hostile work environment claim under the DCHRA occurred in Washington, D.C., that claim need not be dismissed for lack of jurisdiction at this time."). Based on that precedent, Defendant argues that "[w]hether this Court has jurisdiction under the DCHRA

9

to hear this case therefore turns on whether (1) any of the acts that [Plaintiff] alleges to be discriminatory took place in the District, or (2) the effects of any discriminatory acts that took place outside the District were felt in the District." ECF No. 15 at 4.

However, "as an axiom of our federal system, Congress alone defines the lower federal courts' subject-matter jurisdiction." *Odom v. Penske Truck Leasing Co.*, 893 F.3d 739, 742 (10th Cir. 2018); *see also, e.g.*, *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 167 (1939) ("The jurisdiction of the federal courts—their power to adjudicate—is a grant of authority to them by Congress . . . ."). "Once Congress has conferred subject matter jurisdiction on the federal courts, state law cannot expand or contract that grant of authority." *Goetzke v. Ferro Corp.*, 280 F.3d 766, 779 (7th Cir. 2002); *see also, e.g.*, *Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 553 (5th Cir. 2025) ("Only Congress and the Constitution define—and thus can limit—the jurisdiction of federal courts."); *Odom*, 893 F.3d at 742 ("[W]hen a state proscribes its own courts' jurisdiction over particular subject matter, it does not divest the authority of federal courts within its borders.").

As noted, Defendant is a Wisconsin corporation with no alleged connection to Maryland, Plaintiff is a Maryland resident, and this case was removed from D.C. Superior Court on the basis of diversity jurisdiction. No party has suggested that there is a lack of complete diversity here. Accordingly, "[i]n this case, the federal diversity statute, 28 U.S.C. § 1332, conferred subject matter jurisdiction on [this] court to adjudicate [Plaintiff's] claims." *Goetzke*, 280 F.3d at 779. The text of the DCHRA "does nothing to affect that grant of jurisdictional authority." *Id.* Therefore, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

That a federal court has subject matter jurisdiction does not, however, mean that it "may impose liability based on claims a state has created but deprived its courts the power to adjudicate."

10

*Odom*, 893 F.3d at 742. "When a federal court exercises diversity jurisdiction, it merely serves as a neutral forum in which to present state law claims." *Goetzke*, 280 F.3d at 779. "Thus, a federal forum, 'when invoked on grounds of diversity of citizenship, cannot give that which the state has withheld." *Id.* (citation modified) (quoting *Angel v. Bullington,* 330 U.S. 183, 192 (1947)). So, "[i]f state substantive law has denied a plaintiff a remedy for his cause of action, the district court must dismiss the complaint for failure to state a claim upon which relief may be granted." *Id.* Therefore, whether the conduct alleged is covered by the DCHRA is discussed below in connection with Defendant's arguments that Plaintiff has failed to state a claim. *See* Section III.C.3, *infra*.

### B.    Personal Jurisdiction

Personal jurisdiction comes in two varieties, general and specific. *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C. 2006). General jurisdiction refers to the "'all purpose' adjudicatory authority" of a court "to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity." *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981). Here, Plaintiff does not claim the Court may exercise general jurisdiction over Defendant. *See* ECF No. 16 at 12 (arguing only that the Court may exercise specific jurisdiction over Defendant). Specific jurisdiction refers to a court's authority "to entertain controversies based on acts of a defendant that touch and concern the forum." *Steinberg*, 672 F.2d at 928. "Therefore, 'specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction."'" *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Accordingly, specific

11

jurisdiction must be assessed on a claim-by-claim (and defendant-by-defendant) basis. *See id.* ("Specific jurisdiction is tied to each defendant and to each claim.").

To establish specific jurisdiction over a non-resident defendant in a diversity case, the plaintiff must demonstrate compliance with the state's long arm statute and with due process. *See, e.g.*, *Miley v. Hard Rock Hotel & Casino Punta Cana*, 537 F. Supp. 3d 1, 6 (D.D.C. 2021). The District's long-arm statute provides, in relevant part, that courts may exercise personal jurisdiction over any person, acting "directly or by an agent," as to a claim for relief arising from the person's:

> (1) transacting any business in the District of Columbia;
>
> . . .
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a)(1), (3)–(4). Only "claim[s] for relief arising from acts enumerated in this section" may be asserted against a defendant. *Id.* § 13-423(b). And even if the requirements of the long-arm statute are met, the exercise of jurisdiction over a defendant must "not violate due process." *Miley*, 537 F. Supp. 3d at 6.

Plaintiff asserts that her allegations satisfy the subsections set out above.[9] *See* ECF No. 16 at 12. It is worth noting, however, that her briefing on this issue is underwhelming: Although she asserts that "[t]he D.C. long-arm statute authorizes specific jurisdiction over any person who, inter

---

[9] For the purposes of this inquiry into personal jurisdiction over Defendant, the Court assumes Plaintiff's claims have merit. *See, e.g.*, *Elemary v. Phillipp Holzmann A.G.*, 533 F. Supp. 2d 116, 122 (D.D.C. 2008) ("In resolving a challenge to personal jurisdiction, 'the Court may assume the plaintiff's claims are meritorious . . . .'" (citation modified) (quoting *Kopf v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C. 2006)). Whether Plaintiff states claims upon which relief can be granted is addressed in Section III.C, *infra*.

alia: (1) transacts business in the District [or] (2) causes tortious injury in the District by an act inside or outside the District while engaging in a persistent course of conduct here," ECF No. 16 at 12 (citing D.C. Code § 13-423(a)(1), (3)–(4)), her discussion neither evaluates the issue claim by claim nor explains which allegations satisfy which section of the provision.

1.    Section 13-423(a)(1)—Transacting Business

"To satisfy the 'transacting business' prong of the long-arm statute, a plaintiff must prove: 'First, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia.'" *Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC*, No. 19-cv-89, 2020 WL 6262090, at *6 (D.D.C. Oct. 23, 2020) (quoting *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 24 (D.D.C. 2014)). "D.C. and federal courts have consistently interpreted section (a)(1) to require a commercial or business activity." *Trump v. Comm. on Ways & Means, U.S. House of Representatives*, 415 F. Supp. 3d 98, 107 (D.D.C. 2019). Courts have found that commercial or business-related activity includes such things as "advertising in the District, operating an office in the District, . . . holding a board meeting in the District," and making "employment decisions . . . in the District (such as a decision to fire an employee)." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 111 (D.D.C. 2018) (internal citations omitted). It excludes acts like "the in-state commission of a tort," *id.* (quoting *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 275 n.10 (D.C. 2001)) and, under the government contacts exception, "access[ing] the instrumentalities of the federal government" through activities such as lobbying,

13

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44 (D.D.C. 2003) (quoting *Cellutech, Inc.*

*v. Centennial Cellular Corp.*, 871 F. Supp. 46, 50 (D.D.C. 1994)).

Here, Plaintiff alleges that Defendant "conducted policy, coalition, and funding work

through th[e] [D.C.] office" and that she "worked in and out of the D.C. office," including by

attending events and a Board meeting there.[10]  ECF No. 16 at 12; ECF No. 9, ¶ 7.  Those contacts

are the sort that local and federal courts have recognized as "transacting business" in the District.

*See IMAPizza*, 334 F. Supp. 3d at 111 (noting that "operating an office in the District" and "holding

a board meeting in the District" are commercial or business-related activities).

However, "[t]he D.C. Circuit has emphasized that, under subsection (a)(1), jurisdiction 'is

limited to claims arising from the particular transaction of business in the District.'"  *Plastics*

*Indus. Ass'n v. Bonta*, No. 24-cv-1542, 2025 WL 1025142, at *3 (D.D.C. Apr. 7, 2025) (quoting

*World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002)).

Plaintiff's charges of disparate treatment and a hostile work environment—both of which appear

to rely on the same allegations—concern (1) a group of eight directors falsely accusing her of

misdeeds, (2) a consequent investigation, (3) unprofessional conduct by directors in meetings with

Plaintiff, (4) drives to unionize purportedly designed to harass her, (5) a breach of confidentiality

by staff members, (6) the Board's failure to address the conduct Plaintiff complained of, and (7)

Plaintiff's constructive termination.  *See* ECF No. 9, ¶¶ 8–18.  The "retaliatory conduct" she alleges

consists of the Board's failure to act to prevent the alleged harassment and thereafter "giving [her]

three untenable options" at the July 3, 2024, Board meeting: "resign, termination, or mutual

---

[10] Although Plaintiff mentions "lobbying" as some of the work she performed in the D.C. office (which is excluded from consideration under the government contacts exception), she also offers "coalition meetings[] and executive management" (which are not).  ECF No. 16 at 12.

separation."[11]  *Id.*, ¶¶ 18, 36; *see also* ECF No. 16 at 18 (asserting that Plaintiff's retaliation claim relies on Board's failure "to protect her" and presentation of "three forced separation options— resignation, termination, or 'mutual separation'").  Although that conduct is related to Plaintiff's *employment*, it is not sufficiently related to the "'*particular transaction of business*' in the District" identified above.  *World Wide Mins.*, 296 F.3d at 1168 (emphasis added) (quoting *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981)); *see also, e.g.*, *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 27 (D.D.C. 2017) ("[T]he plaintiff must show some sort of causal relationship between a defendant's [forum] contacts and the episode in suit." (citation modified) (quoting *Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237, 247 (D.D.C. 2015))).  Judge Kollar-Kotelly's recent opinion in *Juselis v. Arlington Management Employees LLC* is instructive.  No. 23-cv-349, 2026 WL 622225 (D.D.C. Mar. 5, 2026).  There, the plaintiff sued her employer Arlington Management Employees LLC ("Arlington") and its managing partner Peter Manos for, among other things, disability discrimination, sex discrimination, and retaliation related to her termination.  *Id.* at *1–2.  Arlington was a Delaware corporation headquartered in Maryland; Manos was a D.C. resident who worked both from home and from the Maryland office; and plaintiff was a D.C. resident who worked both from home and from the Maryland office.  *See id.* at *1.  To establish specific personal jurisdiction over Manos, the plaintiff pointed out that Manos "often assigned her tasks while he was working from his []home in the District, and that he also routinely conducted business development activity and attended business-related meetings in

---

[11] In connection with its Rule 12(b)(6) argument that Plaintiff has failed to state a claim, Defendant contends that much of this conduct cannot form the basis of Plaintiff's claims because it occurred outside the statute of limitations.  *See* ECF No. 15 at 9–11.  Defendant could have, but did not, argue that time-barred conduct should not be considered in determining personal jurisdiction. *See* ECF No. 15 at 7–9; ECF No. 17 at 6–7. Therefore, the Court does not address that topic except to note that the law appears to be unsettled on the issue. *See, e.g.*, *Sucesores de Don Carlos Nuñez y Doña Pura Galvez, Inc. v. Société Générale, S.A.*, No. 20-cv-851, 2023 WL 2712505, at *6 n.8 (S.D.N.Y. Mar. 30, 2023) (noting that "[t]he case law on th[e] subject [of whether time-barred conduct can be used to support the exercise of personal jurisdiction] is scant and mixed"); *Moreira v. Société Générale, S.A.*, No. 20-cv-9380, 2023 WL 359446, at *4 (S.D.N.Y. Jan. 23, 2023) (citing cases on both sides of the issue).

the District." *Id.* at *5 (internal quotation marks omitted). The court ruled that the plaintiff's termination did not "aris[e] from" those contacts as required by D.C.'s long-arm statute. *Id.* at *4 (emphasis omitted) (quoting D.C. Code § 13-423(b)). More specifically, the court found that, even assuming that Manos made the decision to terminate the plaintiff, that "termination did not arise out of Manos's alleged 'business development' and 'business-related meetings' in the District. . . . Accordingly, whatever the status of Manos's contacts with the District, those contacts are insufficient for [the plaintiff] to establish specific jurisdiction over Manos because they do not relate to [her] underlying claims." *Id.* at *5. Similarly, that Arlington claimed to be a firm "based and/or headquartered in the District that can leverage its Washington, D.C. network and contacts to help its clients," that it worked with firms and banks in the District, and that it held "a variety of business lunches and dinners[] and even [held] annual meetings in the District," did not relate to the plaintiff's claims of discrimination. *Id.* at *6 (internal quotation marks omitted). Here, too, Plaintiff's allegations of discrimination, hostile work environment, and retaliation do not arise out of Defendant's "policy, coalition, and funding work" conducted through the D.C. office, the events and meetings held there, or the coordination of Plaintiff's work by D.C.-based staff. *Cf., e.g.*, *Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 72 (D.D.C. 1996) (finding that a racial discrimination claim did not arise out of a firm's solicitation of business in D.C.). Accordingly, Plaintiff has not established personal jurisdiction over Defendant under D.C. Code 13-423(a)(1).

        2.      Section 13-423(a)(3)—Conduct in D.C. Causing Tortious Injury in D.C.

Section (a)(3) "is satisfied if a defendant 'caus[es] tortious injury in the District of Columbia by an act or omission in the District of Columbia.'" *Trump*, 415 F. Supp. 3d at 108 (alteration in original) (quoting D.C. Code 13-423(a)(3)). It "is a precise and intentionally restricted tort section . . . which confers jurisdiction only over a defendant who *commits an act in*

*the District* which *causes injury in the District*, without regard to any other contacts." *Id.* (quoting

*Forras v. Rauf*, 812 F.3d 1102, 1107 (D.C. Cir. 2016)).

Under this provision, "the relevant conduct is that 'of the alleged tortfeasor,' who may act 'directly or through an agent.'" *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 125 (D.D.C. 2008) (citations omitted) (first quoting *Margoles v. Johns*, 483 F.2d 1212, 1218 (D.C. Cir. 1973); and then quoting D.C. Code § 13-423(a)). Here, Plaintiff alleges that a few allegedly wrongful acts of Defendant or its agents occurred in D.C.: D.C.-based staff members were involved in the allegedly "false and baseless investigations into [Plaintiff's] personal life, tax records, and property ownership" and in the alleged disclosure of confidential information and false information about Plaintiff to other organizations.[12] ECF No. 9, ¶¶ 9, 15, 25. Those allegations, which satisfy the first part of the test—a tortious act within the District—make up part of her disparate treatment and hostile work environment claims. *See id.*, ¶¶ 21–32. Plaintiff's retaliation claim, however, is based entirely on conduct by the Board—specifically, that it "failed to protect her, allowed the [harassment] campaign to continue, and then presented her with three forced separation options." ECF No. 16 at 18. Plaintiff fails to allege that any of those acts (or failures to act) occurred in the District of Columbia. For example, there is no allegation as to where the Board convened when it made the decision to remove Plaintiff from her position. And the ambiguous statement that "she carried out her duties under the supervision of and in coordination with staff, Board members, and partners, many of whom were based in the District of Columbia," ECF No. 9, ¶ 7—which carefully does *not* assert that Board members were located

---

[12] In light of the lack of any argument to the contrary, the Court assumes that these D.C.-based staff members were acting as Defendant's agents when they made these disclosures. *See Assoc. Producers, Ltd. v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 166 (D.D.C. 2014) (noting that, under D.C.'s long-arm statute, the "the proper inquiry" for purposes of establishing personal jurisdiction over an employer for the conduct of an employee is whether the employee "was acting as an *agent*" of the employer "as relate[d] to" the allegedly wrongful action).

in D.C.—is the sort of vague "intimation[]" that a court need not accept when evaluating whether it has personal jurisdiction over a defendant.[13]  *GTE New Media*, 199 F.3d at 1349.  That is especially true given that the affidavit of Cassar avers under penalty of perjury that no Board members were based in D.C. at the relevant times.  *See* ECF No. 15-3, ¶ 4; *Groop Internet Platform Inc. v. Psychotherapy Action Network*, No. 19-cv-1854, 2020 WL 353861, at *3 (D.D.C. Jan. 21, 2020) ("The Court . . . 'need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts.'" (some internal quotation marks omitted) (quoting *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017))).  Accordingly, the Court does not have personal jurisdiction over Defendant for purposes of the retaliation claim pursuant to D.C. Code § 13-423(a)(3).  *See, e.g.*, *Cockrum*, 319 F. Supp. 3d at 175 ("Specific jurisdiction is tied to each defendant and to each claim.").

The question then becomes whether the staff's allegedly wrongful actions in investigating Plaintiff and disclosing confidential and false information about her "cause[d] injury in the District"—satisfying the second part of the Section (a)(3) test.  *Trump*, 415 F. Supp. 3d at 108 (emphasis omitted) (quoting *Forras*, 812 F.3d at 1107).  If they did, the Court has personal jurisdiction over Defendant under that section for the purposes of Plaintiff's hostile work environment and disparate treatment claims.  Plaintiff asserts reputational damage from the harassment and discrimination, *see* ECF No. 9, ¶ 30 ("As a direct and proximate cause of the Defendant's actions, Plaintiff has suffered mental distress, humiliation, illness, and damage to her employment and personal reputation."), and relies on those to anchor her injuries to the District,

---

[13] Indeed, that statement is immediately followed by a list of D.C.-based partner organizations.  *See* ECF No. 9, ¶ 7 ("Some of the D.C. based partners that [Plaintiff] worked with were FVAW C4, CLASP, Center for American Progress, National Women's Law Center, and MomsRising. [Plaintiff] attended events hosted by the D.C. based partners, including but not limited to MotheringJustice.").  The best interpretation of the assertion, then, is that "many" of Defendant's "partner[]" organizations "were based in the District of Columbia." *Id.*

18

*see* ECF No. 16 at 12 (arguing that "the reputational and employment injuries she alleges are centered in D.C."). The DCHRA appears to allow successful plaintiffs to recover for such injuries, *see, e.g.*, *Jean-Baptiste v. District of Columbia*, 931 F. Supp. 2d 1, 14–15 (D.D.C. 2013) (noting that compensatory damage, including for "noneconomic injuries such as emotional distress, pain and suffering, reputational harm, etc.," are available under both Title VII and the DCHRA); *see also* D.C. Code § 2-1403.16(f) (allowing a court to "grant any relief it deems appropriate . . . to a person who brings a cause of action pursuant to" the DCHRA).

Reputational injury "[o]rdinarily . . . occurs where the [plaintiff] resides." *Poss v. Kern*, No. 23-cv-2199, 2024 WL 4286088, at *3 (D.D.C. Sep. 25, 2024). However, the plaintiff's "place of employment could also be a possible location." *See id.*; *see also Weyrich v. New Republic, Inc.*, 235 F.3d 617, 626–27 (D.C. Cir. 2001) (finding that, because the appellant "worked in Washington, D.C.," that was "the place where [he] suffered injury by reason of his loss of reputation"). That notion appears to stem from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). In that case, an actress who was a California resident sued in a California court the author and editor of an allegedly defamatory article, both of whom were Florida residents. *See id.* at 784–85. The Supreme Court found that the California court could exercise personal jurisdiction over the defendants, in part because "the brunt of the harm, in terms both of [the actress's] emotional distress and the injury to her professional reputation, was suffered in California," where her "television career was centered." *Id.* at 788–89; *see also Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004) (citing *Calder* for the proposition that "emotional or reputational injury occurs where the plaintiff lives or works"). Thus, the Supreme Court recognized that injury from harm to a person's professional reputation can occur in the place where they do work and/or seek employment. It appears, based on this precedent, that Plaintiff's

19

disparate treatment and hostile work environment claims meet the requirements of D.C. Code § 13-423(a)(3). *Cf. Poss*, 2024 WL 4286088, at \*3 (finding, when determining the locus of the plaintiff's injury under D.C.'s long-arm statute, that the site of the reputational injury to a Tennessee resident who was employed by a federal agency in the District of Columbia was not the plaintiff's domicile but rather the location of his employer, where the defendant sent an allegedly defamatory report).

The exercise of personal jurisdiction must also comport with due process, however. *See, e.g.*, *Miley*, 537 F. Supp. 3d at 6. Addressing that issue "[t]hirty years after *Calder*, the Supreme Court emphasized that 'an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state.'" *Akhmetshin v. Browder*, 761 F. Supp. 3d 1, 11 (D.D.C. 2024) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)), *appeal docketed*, No. 25-7009 (D.C. Cir. Jan. 15, 2025); *see also Walden*, 571 U.S. at 285 ("[I]t is the defendant's conduct that must form the necessary connection with the forum State."). Consequently, when assessing whether the requirements of due process are met because tortious conduct had an in-forum effect, "courts have required a plaintiff to show: '(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and the defendant knows is likely to be suffered—in the forum state.'" *Akhmetshin*, 761 F. Supp. 3d at 11–12 (quoting *Kline v. Williams*, No. 05-cv-1102, 2006 WL 758459, \*5 (D.D.C. Mar. 23, 2006)). Here, Plaintiff alleges that Defendant's staff members in the District of Columbia badmouthed her "to partners who were based in D.C.," which has impacted her employability because "none of the [D.C.]-based partners will hire her." ECF No. 9, ¶¶ 15, 20. That is, on the record before the Court at this early stage of the litigation, Plaintiff has alleged intentional action aimed at D.C. causing harm to her professional reputation in D.C. It is also reasonable to infer that the staff members who allegedly

leaked the information knew that reputational harm was "likely to be suffered" at the location of the entities to which the disclosures were made, that is, D.C.  Under the logic of *Walden*, that appears to satisfy the demands of due process.

Accordingly, at this juncture, Plaintiff has plausibly established that there is personal jurisdiction over Defendant with regard to her disparate treatment and hostile work environment claims under D.C. Code § 13-423(a)(3).

       3.      Section 13-423(a)(4)—Conduct Outside D.C. Causing Tortious Injury in D.C.

Under § 13-423(a)(4):

> a nonresident defendant is subject to personal jurisdiction if the claim against such defendant arises from "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."

*DBW Partners, LLC v. Market Secs., LLC*, No. 22-cv-1333, 2024 WL 3741414, at *14 (D.D.C. Aug. 10, 2024) (quoting D.C. Code § 13-423(a)(4)).  "[B]ecause the harm-generating act (or omission) occurred outside [the forum], the statute calls for something more"—a "plus factor" that "serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987).  Importantly, the plus factor—that is, the requirement that the defendant "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia," D.C. Code § 13-423(a)(4)—"may be *un*related to the claim in suit."  *Crane*, 814 F.2d at 763; *Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 763 (D.C. 2009) ("The claim need not arise . . . from the 'plus factors' that are imposed by subsection (a)(4) on those claim-related acts or omissions.

They are an additional due process safeguard, such as the requirement of 'persistent course of conduct,' to ensure that the party being haled into this jurisdiction's courts has more than a 'scant' connection to the forum." (quoting *Crane*, 814 F.2d at 763)).

Here, Plaintiff's retaliation claim alleges that the Board "failed to protect her, allowed the [harassment] campaign to continue, and then presented her with three forced separation options." ECF No. 16 at 18. Again, Plaintiff does not allege that any of that conduct occurred in the District. Thus, the first requirement is met: the "act or omission [was] outside the District of Columbia." D.C. Code § 13-423(a)(4). Plaintiff also alleges that the harassment and forced separation damaged her reputation in the District of Columbia. *See* ECF No. 9, ¶¶ 36, 38. As above, those allegations are sufficient to meet the requirement that conduct at issue caused injury in the District of Columbia. *See* Section III.B.2, *supra*.

However, the only "plus factor" Plaintiff mentions in her opposition to Defendant's motion to dismiss is that Defendant "engag[ed] in a persistent course of conduct here." ECF No. 16 at 12. In support of that assertion she offers what she calls "multiple, continuous contacts" with the District: (1) Defendant "'maintained its only office in Washington, D.C.' and conducted policy, coalition, and funding work through that office"; (2) Plaintiff "worked in and out of the D.C. office"; (3) Plaintiff's work was supervised and coordinated "by staff and directors based in D.C."; (4) "D.C.-based staff and Board members were central actors in the discriminatory campaign, including breaching confidentiality and defaming Plaintiff to D.C. funders and allies"; and (5) her "reputational and employment injuries . . . are centered in D.C." *Id.* (quoting ECF No. 9, ¶ 4). Plaintiff has made no attempt to explain, through analysis and citation to caselaw, how those allegations show a "persistent course of conduct." D.C. Code § 13-423(a)(4). And the Court has its doubts. For example, Plaintiff's own submissions belie her assertion that Defendant's only

office was in the District and Cassar's unrebutted declaration asserts that the D.C. office was not one to which employees regularly reported. *See* notes 5–6, *supra*. Nor, as noted above in Section III.B.2, does the Court credit Plaintiff's vague intimation of D.C.-based Board members, which is also contradicted by Cassar's declaration. More, that Plaintiff was allegedly harassed and injured in D.C. is not relevant to the "plus factor" required by section (a)(4), but rather goes to tortious conduct and site of injury. *See, e.g.*, *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 7 (D.D.C. 2019) ("[A] plus factor 'must involve conduct "separate from and in addition to the in-state injury"' so as to avoid the exercise of jurisdiction over 'an isolated event' and a defendant who 'otherwise has no, or scant, affiliations with the forum.'" (quoting *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 82 (D.D.C. 2006))).

Plaintiff appears to rely on the allegations that Defendant's employees performed work in and around the D.C. office. But there is no allegation that Defendant required or encouraged employees to work in the D.C. office; indeed, the Cassar declaration suggests otherwise. *See* ECF No. 15-3, ¶ 6 ("From time to time, the FVAW's D.C. office space is used by individuals affiliated with the organization who find themselves in the downtown D.C. area on FZAW-related business and need space to get work done."). Again, it is the *defendant* that must "engage[] in" a "persistent course of conduct" to satisfy the plus factor. D.C. Code § 13-423(a)(4). Nor is there any detail about how often Defendant's employees traveled to D.C. to work. The Amended Complaint identifies a single meeting Plaintiff attended at the D.C. office—"one of the in-person Board meetings in 2024," ECF No. 9, ¶ 7—and her declaration lists one additional instance in which she and other employees were "present at the . . . D.C. office location"—an unidentified "event" in April 2024. ECF No. 16-5, ¶ 8. Generally, to satisfy the "persistent course of conduct" requirement under § 13-423(a)(4), work-related travel to D.C. must be "regular in nature." *DBW*

*Partners*, 2024 WL 3741414, at *15 (quoting *Burman v. Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 153 (D.D.C. 2006)); *see also Lewy v. S. Poverty Law Ctr.*, 723 F. Supp. 2d 116, 124 (D.D.C. 2010) ("Occasional travel to the District is also insufficient [to constitute a persistent course of conduct].").  At this point, Plaintiff has not enumerated sufficient contacts between Defendant and D.C. to constitute a persistent course of conduct

Additionally, there is a due process problem.  *Walden* is an obstacle because—at the very least—there is no indication that the acts or omissions by the Board were "expressly aimed" at the District of Columbia.  *Akhmetshin*, 761 F. Supp. 3d at 12 (quoting *Kline*, 2006 WL 758459, at *5). For example, and unlike with respect Plaintiff's disparate treatment and hostile work environment claims, there is no indication that the Board targeted "partners who were based in D.C." ECF No. 9, ¶ 15, when they failed to protect Plaintiff or required her separation.  Relatedly, it is not clear that the Board knew that the harm would be suffered in the District of Columbia.  *See Akhmetshin*, 761 F. Supp. 3d at 12.  Accordingly, at this juncture, Plaintiff has not shown that she satisfies the requirements of D.C. Code § 13-423(a)(4) or of due process in relation to her retaliation claim.[14]

4.      Jurisdictional Discovery

Plaintiff requests, in the alternative, leave to engage in jurisdictional discovery.  *See* ECF No. 16 at 13.  "It is well established that a plaintiff must have 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction[]' and 'this Circuit's standard for permitting jurisdictional discovery is quite liberal[.]'"  *Poss*, 2024 WL 4286088, at *4 (citation modified) (first quoting *Phoenix Consulting Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir.

---

[14] Because Plaintiff has not established personal jurisdiction over Defendant for purposes of her retaliation claim, the Court will not address whether she has stated a retaliation claim sufficient to withstand Defendant's Rule 12(b)(6) motion.  *See Sinochem Int'l*, 549 U.S. at 430–31 ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

2000); and then quoting *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003)) (allowing jurisdictional discovery into whether the defendant engaged in a persistent course of conduct in D.C.). "That said, courts should not 'construe this Circuit's admittedly liberal jurisdictional discovery standard in such a way as to render it meaningless.'" *Holland v. Cardem Ins. Co., Ltd*, No. 19-cv-2362, 2020 WL 9439381, at *11 (D.D.C. June 22, 2020) (quoting *NBC-USA Hous., Inc. Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 61 (D.D.C. 2010)), *report and recommendation adopted*, Order, *Holland v. Cardem Ins. Co.*, No. 19-cv-2362 (D.D.C. Sep. 2, 2020), ECF No. 20. Rather, a plaintiff should provide a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *Atlantigas*, 290 F. Supp. 2d at 53 (quoting *United States v. Philip Morris Inc.,* 116 F. Supp. 2d 116, 130 n. 16 (D.D.C. 2000)).

Plaintiff has made no such showing but merely states that factual disputes "warrant jurisdictional discovery, not dismissal." ECF No. 16 at 3; *see also id.* at 13. Generally, that failure would merit denial of Plaintiff's request. *See, e.g.*, *Cockrum*, 319 F. Supp. 3d at 187–88 (finding "a couple of sentences" in the plaintiff's opposition to the defendant's motion to dismiss— "Plaintiffs believe that the allegations in the Complaint are sufficient to establish that this Court may exercise personal jurisdiction over Defendants. If the Court disagrees, Plaintiffs should be allowed to take jurisdictional discovery"—was "conclusory, ambiguous, and explain[ed] nothing" (quoting the record)); *NBC-USA Hous.*, 741 F. Supp. 2d at 60 (finding insufficient a request for jurisdictional discovery that asked "only 'to establish the known jurisdictional predicates with record evidence'" (quoting the record)); *Atlantigas*, 290 F. Supp. 2d at 53 (a party's assertion that it sought jurisdictional discovery "to confirm that [the] [d]efendants have customers in the District of Columbia or otherwise 'transact business' in the District of Columbia" was "not enough to

justify jurisdictional discovery" (quoting the record)).  Here, however, Defendant itself suggests permitting Plaintiff discovery into the connections between this case and the District of Columbia as an option in its reply brief (albeit in relation to its erroneous argument that this Court lacks subject matter jurisdiction over the case).  *See* ECF No. 17 at 4 ("If necessary, the Court should permit limited jurisdictional discovery for purposes of allowing Ms. Kalipeni the opportunity to prove that an actionable event of discrimination took place in the District.").  And nowhere does it contend that jurisdictional discovery should be denied because Plaintiff's request is deficient.  Because Defendant suggested the option of jurisdictional discovery and failed to oppose Plaintiff's request for it—however unsatisfactory—the Court is not overly concerned about "subject[ing] [it] to the burden and expense of [such] discovery."  *NBC-USA Hous.*, 741 F. Supp. 2d at 60 (quoting *Atlantigas*, 290 F. Supp. 2d at 53).  Therefore, the Court will allow Plaintiff to engage in "focused discovery aimed at addressing matters relating to personal jurisdiction" over her retaliation claim. *GTE New Media Servs.*, 199 F.3d at 1352.

### C.    Failure to State a Claim

Defendant contends that, to the extent Plaintiff's claims are based on events pre-dating July 3, 2024, they are time-barred and should be dismissed under Rule 12(b)(6).  ECF No. 15 at 9–11. Defendant further asserts that Plaintiff has not alleged that the adverse actions or hostile work environment she complains about occurred "'because of' [her] membership in a protected class." *Id.* at 11–12.  The Court addresses each of those arguments below.[15]

### 1.    Statute of Limitations

The DCHRA currently has a two-year statute of limitations.  *See* D.C. Code § 2-1403.16(b)(1).  However, at the time of the events outlined in the complaint, the statute of

---

[15] As noted above, the Court does not address Plaintiff's retaliation claim because she has not established personal jurisdiction in relation to that claim.  *See* note 14, *supra*.

limitations was one year.  *See Johnson v. Georgetown Univ.*, No. 25-cv-1540, 2026 WL 879522, at \*23 n.19 (D.D.C. Mar. 31, 2026) ("Effective March 21, 2025, a DCHRA plaintiff has two years, not one, to file her claim in court.").  The D.C. Court of Appeals has noted that "[g]enerally, if a new statute of limitations does not specifically repeal an old one, then the old one controls actions which had already accrued where the new statute was enacted." *Owens-Corning Fiberglas Corp. v. Henkel*, 689 A.2d 1224, 1235 (D.C. 1997).  For that reason, at least one other judge in this Circuit has expressly held that the extended limitations period "does not apply retroactively." *Valentine v. George Washington Univ.*, No. 24-cv-1081, 2025 WL 2029802, at \*5 n.5 (D.D.C. July 21, 2025); *see also Johnson*, 2026 WL 879522, at \*23 n.19 (citing that proposition from *Valentine* with approval).  Plaintiff mounts no argument that the change to the statute of limitations is retroactive but states only that "[w]hether the 2025 amendment extending the DCHRA limitations period to two years applies is a legal question better addressed on a fuller record."  ECF No. 16 at 15.  She does not explain how further development of the factual record in this case would establish retroactivity or otherwise affect what she admits is a "legal question."  Accordingly, for all these reasons, the Court will apply the one-year statute of limitations that applied when Plaintiff's claims accrued.  Because Plaintiff filed her complaint in D.C. Superior Court on July 2, 2025, that means that any claim that accrued on or before July 2, 2024, is time-barred.

Defendant is also correct that the only event in the Amended Complaint that occurred after July 2, 2024, is the meeting during which the Board effectively decided that Plaintiff could no longer serve as Executive Director.[16]  *See* ECF No. 9, ¶¶ 17–18; *see also id.*, ¶¶ 8–16 (discussing

---

[16] Plaintiff asserts that "[a]fter the investigation report came out . . . the harassment towards her intensified."  ECF No. 9, ¶17.  She supplies no further detail about, for example, when this harassment occurred, who engaged in it, or what it consisted of.  Accordingly, the Court does not credit this conclusory allegation.  *See, e.g.*, *Iqbal*, 556 U.S. at 681 (stating that "conclusory" allegations are "not entitled to be assumed true").

events between April 16, 2024, and June 21, 2024).  Thus, Plaintiff's claim of disparate treatment related to that event is timely.  Plaintiff goes further and maintains that "[t]he pre-July 3 events are part of a single, continuous discriminatory and retaliatory campaign culminating in that constructive discharge" and so are timely because "an act contributing to the claim occur[red] within the filing period."  ECF No. 16 at 13 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  However, the Supreme Court in *Morgan* held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[17]  536 U.S. at 113.  And so, Plaintiff cannot base her disparate treatment claim on any act other than her "constructive discharge" on July 3, 2024.[18]  ECF No. 16 at 13.

The timeliness of Plaintiff's hostile work environment claim is more complicated.  *Morgan* also held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."  536 U.S. at 105.  But to allege a hostile work environment, "a plaintiff cannot rely on 'an array of unrelated discriminatory or retaliatory acts.'"  *Perry v. Wilkie*, No. 17-cv-2021,

---

[17] *Morgan* is a Title VII case.  *See* 536 U.S. at 104.  Courts may "look[] to cases construing Title VII" when "construing the D.C. Rights Act" because "[t]he anti-discrimination provisions of both statutes are substantially similar."  *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n.17 (D.C. 1993) (quoting *Atl. Richfield Co. v. D.C. Comm'n on Human Rights*, 515 A.2d 1095, 1103 n.6 (D.C. 1986); *see also, e.g.*, *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 10 n.4 (D.D.C. 2008) ("[I]t has been uniformly held that when construing the DCHRA courts should look to precedent construing Title VII.").  Indeed, "[t]he D.C. Court of Appeals explicitly adopted the *Morgan* framework for the DCHRA in *Lively v. Flexible Packaging*, 830 A.2d 874, 889 (D.C. 2003)."  *Barrett v. Chreky*, 634 F. Supp. 2d 33, 36 n.1 (D.D.C. 2009).

[18] The same will be true of her retaliation claim, if Plaintiff can establish personal jurisdiction as to that claim.  That is, Plaintiff's retaliation claim can be based only on her discharge.

2020 WL 1853276, at *6 (D.D.C. Apr. 12, 2020) (quoting *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 231 (D.D.C. 2015)).  Rather,

> incidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim—if, for example, they 'involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers.'

*Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) (citation modified) (quoting *Morgan,* 536 U.S. at 120–21).  Put another way,

> Where [a] discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim.  The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim.

*Chambless v. La.-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007).  "*Morgan* requires courts to make an individualized assessment of whether incidents and episodes are related" and "does not limit the relevant criteria, or set out factors or prongs."  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010).  And, although "courts in this Circuit 'frown on plaintiffs who attempt to bootstrap their alleged discrete acts'" of discrimination, like Plaintiff's constructive discharge, "into a broader hostile work environment claim,'" *Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 WL 15419995, at *23 (D.D.C. Oct. 27, 2022) (quoting *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007)), a court may not "dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own," *Baird*, 662 F.3d at 1252.

Importantly, for Plaintiff to establish that her hostile work environment claim is timely, she must demonstrate that the single act occurring within the limitations period—the July 3 decision to remove her—is sufficiently related to earlier acts "to meld into a coherent whole."  *Ortega v.*

*Mayorkas*, No. 23-cv-2417, 2024 WL 4119390, at \*16 (D.D.C. Sep. 9, 2024); *see also Baird*, 662 F.3d at 1251 ("[I]ncidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim."). To repeat, in support of her hostile work environment claim, Plaintiff asserts that on April 16, 2024, eight directors sent a letter to the Board of Directors calling for her dismissal based on false accusations of misdeeds, including that she was violating immigration laws; on April 24, 2024, the Board instituted an investigation into those accusations; on May 16, 2024, the same group of eight directors sent another letter to the Board alleging additional bad acts; during the course of the investigation, some directors refused to show up for meetings or to report on their work and one harangued Plaintiff to resign; on May 20, 2024, FVAW staff requested voluntary union recognition and, soon after, directors asked to be unionized; on June 4, 2024, after the Board asked for time to research the unionization issue, the staff filed a charge with the NLRB; on June 13, 2024, that charge was withdrawn; at some point in May or June, staff members Chavin-Grant and Gardner disclosed confidential and false information about Plaintiff to others, including that Plaintiff was anti-union; on June 21, 2024, Plaintiff found out that a tip was made to ICE that she was violating immigration laws; and, at approximately the same time, Plaintiff informed the Board of the alleged harassment but it failed to intervene. *See* ECF No. 9, ¶¶ 8–16; ECF No. 16 at 13–14. Then, at the July 3, 2024, meeting, the Board reviewed the results of the investigation, which exonerated Plaintiff, but nevertheless the Board asked her to leave because "the environment was too tenuous for [her] to be able to lead and move forward." ECF No. 9, ¶ 17.

Defendant argues that these events "are diverse and facially unrelated," with "nothing linking any of the events described . . . to each other." ECF No. 15 at 11. Its professed inability

to find *any* connection among these events is unconvincing.  Plaintiff has alleged that within the course of four months, eight directors sent a letter to the Board of Directors falsely accusing Plaintiff of misconduct; that triggered an investigation into Plaintiff, which prompted those same directors to send another letter to the Board with additional false accusations; during the investigation, staff added flame to the fire by spreading false allegations that Plaintiff was anti-union; the investigation then spurred the decision by the Board that exonerated Plaintiff but nevertheless effectively required her dismissal.  That is, the conduct alleged outlines a concerted effort to smear Plaintiff, occurring over the course of a few months, that ultimately led to her constructive discharge.  Additionally, it was allegedly perpetrated by a relatively small group of actors.  *See, e.g.*, *Edwards v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 624 (E.D. Va. 2011) ("The fact that the 'untimely' acts and the anchoring acts may have a relatively small group of employees in common counsels in favor of finding that the Plaintiff has alleged one unitary hostile work environment.").  On the present record and at this early stage of the litigation, the Court finds that Plaintiff has alleged incidents that sufficiently "meld into a coherent whole."[19]  *Ortega*, 2024 WL 4119390, at *16.

Accordingly, Plaintiff's disparate treatment and hostile work environment claims are not time-barred.

    2.     "Because of" Plaintiff's Membership in a Protected Class

Defendant maintains that neither Plaintiff's disparate treatment claim nor her hostile work environment claim alleges any "link between her membership in any protected class and the events

---

[19] Defendant's complaint that these actions "were performed by people other than FVAW as an entity" and by people without the authority to hire or fire Plaintiff, ECF No. 17 at 8 (emphasis omitted), is not well-taken.  First, the decision to push Plaintiff out was obviously made by "FVAW as an entity" working through the Board.  Second, a hostile work environment can be actionable even when the alleged culprit does not have hiring or firing authority over the plaintiff.  For example, if the harasser is a co-worker, the employer will be found liable if it "knew or should have known of the harassment and failed to implement prompt and appropriate corrective action."  *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999).  Plaintiff has alleged that she informed the Board of the harassment and it refused to

about which she complains." ECF No. 15 at 12. According to Defendant, "[t]he closest Plaintiff gets to a DCHRA claim is her allegation that she was the first Black woman in her role, and that no other person in the role has ever faced similar treatment," which is "insufficient." *Id.* At this early stage of the proceedings, the Court disagrees on both counts.

"[T]he 'initial burden' of pleading the 'because of' element is 'not onerous[.]'" *Keith v. U.S. Gov't Accountability Off.*, No. 21-cv-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (quoting *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102–103 (D.D.C. 2021)). To be sure, "a plaintiff cannot survive a motion to dismiss merely by providing 'threadbare' or conclusory allegations of discrimination" or "merely by invoking" her protected characteristics "in the course of a claim's narrative." *Id.* (citation modified) (quoting *Doe #1*, 554 F. Supp. 3d at 103). But "courts in this Circuit have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive a motion to dismiss." *Fosque v. D.C. Hous. Auth.*, 25-cv-3515, 2026 WL 1073049, at *2 (D.D.C. Apr. 21, 2026) (quoting *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011)).

"A frequent means of pleading factual allegations sufficient to 'raise an inference of discrimination' . . . is 'by showing that the plaintiff was treated differently from similarly situated employees who are not part of the protected class.'" *Keith*, 2022 WL 3715776, at *3 (citation modified) (quoting *Doe #1*, 554 F. Supp. 3d at 103). Plaintiff proceeds, at least in part, on such a theory here. To succeed on a comparator theory, she "must plead enough facts about those comparators and the relevant context to allow a plausible inference that [she] was treated

---

act. *See* ECF No. 9, ¶¶ 27, 46. Third, caselaw recognizes that an individual may in some circumstances be considered a supervisor—and thus subject her employer to vicarious liability, *see, e.g.*, *Jackson v. Collins*, No. 23-cv-1024, 2025 WL 2400911, at *6 (D.D.C. Aug. 19, 2025)—even if she is, for example, one member of a multi-member governing board and therefore does not have unilateral authority to hire and fire, *see, e.g.*, *Kibbons v. Taft Sch. Dist. 90*, 563 F. Supp. 3d 798, 809–10 (N.D. Ill. 2021).

differently because of" her protected characteristics.  *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025).  To survive a motion to dismiss, a plaintiff need not "include factual allegations showing that the comparator's circumstances are 'nearly identical' to the plaintiff's in 'all relevant respects.'"  *Id.* at 531 (quoting *Joyner v. Morrison & Foerster LLP*, No. 20-cv-1440, 2023 WL 6313194, at *5 (D.D.C. Sep. 27, 2023)).  Instead, she must allege only that "a comparator was similarly positioned to the plaintiff in at least some relevant respects" with enough detail to "provide a benchmark against which" the court can "plausibly infer that discrimination caused the defendant's differential treatment of the plaintiff."  *Id.*  Although the standard "is sensitive to the specific context of each case," *id.* at 530, courts have found "details about the [comparator's] job title, how th[e] [comparator's] responsibilities compared to [the plaintiff's], . . . whether [the plaintiff] and the [comparator] reported to the same supervisors," and similarities in job performance, *Yuvienco v. Vilsack*, No. 23-cv-186, 2024 WL 727712, at *4 (D.D.C. Feb. 22, 2024), to be relevant.  Where "there are some similarities and some differences between a plaintiff and her potential comparator, courts must assess their relative weight." *Johnson v. Georgetown Univ.*, __ F. Supp. 3d __, __, 2026 WL 879522, at *15 (D.D.C. 2026).

Plaintiff asserts:

Plaintiff was falsely accused of mismanagement of funds, embezzlement, conflicts of interest, and immigration violations. Plaintiff was treated differently than previous Executive Directors who were not Black and/or members of the LBGT community.  Plaintiff was the first Black woman to serve as the Executive Director of [FVAW] and no other Executive Director faced this extreme treatment, without any consequences to the offending employee.  The prior Executive Directors, Ellen Bravo (white woman, heterosexual) and Wendy Chun-Hoon (Hawaiian, white

presenting woman, LGBTQIA) were not subjected to the same treatment Plaintiff endured during her time as Executive Director.

ECF No. 9, ¶ 26.  Those are the bulk of her comparator allegations.

"[T]o support 'an inference of discrimination it is essential that the similarly situated comparator not share the plaintiff's protected trait.'"  *Charon v. Anasazi Grp.*, No. 25-cv-430, 2025 WL 2591785, at *5 (D.D.C. Sep. 8, 2025) (citation modified) (quoting *Mitchell v. Garland*, No. 23-cv-2412, 2024 WL 3251217, at *4 (D.D.C. July 1, 2024)).  Plaintiff has claimed discrimination—both disparate treatment and hostile work environment—based on her race (Black), national original (Malawian), and sexual orientation ("member of the LGBTQIA community").  ECF No. 9, ¶ 5, 25.  Bravo (non-Black and heterosexual) may therefore be an appropriate comparator as to claims of racial and sexual orientation discrimination (there are no allegations about her national origin); Chun-Hoon (non-Black and Hawaiian) may be an appropriate comparator as to claims of racial and national origin discrimination (she is identified as "LGBTQIA").  *Id.*, ¶ 12.

As to similarities, Plaintiff has alleged that the putative comparators had the same job title—"Executive Director."  *Id.*, ¶ 12.  It appears that there is only one Executive Director at a time, and it is therefore a reasonable assumption that they all had similar job responsibilities, which Plaintiff describes as "overall management" of the organization, "including managing staff and ensuring [Defendant] achieved its objectives and reporting to the Board of Directors," *id.*, ¶ 6—in any case, Defendant has not contended otherwise.  *See Nurriddin*, 818 F.3d at 756 (noting that when ruling on a motion to dismiss for failure to state a claim, the court must draw all "reasonable inferences" in favor of the plaintiff); *see also Palish v. K&K RX Servs., L.P.*, No. 13-cv-4092, 2014 WL 2692489, at *12 (E.D. Pa. June 13, 2014) (noting that, where a putative comparator "had the same supervisor" and held the same position as Pharmacy Manager, "it is reasonable to infer that

34

she had the same responsibilities").  And, as that last allegation indicates, the Executive Director reports to and is supervised by the Board.  Thus, Plaintiff has alleged that she, Bravo, and Chun-Hoon had the same job title; similar duties; and reported to the same supervisory body.  So, Bravo and Chun-Hoon were "similarly positioned to the plaintiff in at least some relevant respects." *Joyner*, 140 F.4th at 531; *see also, e.g.*, *Austin v. Phone2Action*, No. 21-cv-491, 2023 WL 6201409, at *4–5 (E.D.N.Y. Sep. 22, 2023) (finding, at the more onerous summary judgment stage, a male employee with the same job title, responsibilities, and supervisors as the female plaintiff to be an appropriate comparator in a gender discrimination case); *Roehrig v. W.G. Tomko, Inc.*, No. 15-cv-146, 2016 WL 2755177, at *2  (W.D. Pa. May 12, 2016) (finding, at the summary judgment stage, younger employees "in the same department as Plaintiff with similar job titles and responsibilities" to be appropriate comparators in an age discrimination case).

As to the hostile work environment claim, Plaintiff has also alleged that neither Bravo nor Chun-Hoon was subjected to the same allegedly abusive treatment.  *See* ECF No. 9, ¶ 26.  At this stage, the Court finds those allegations sufficient to support "a plausible inference that [she] was treated differently because of" her race (as compared to Bravo and Chun-Hoon), national origin (as compared to Chun-Hoon), and sexual orientation (as compared to Bravo) as to her hostile work environment claim.  *Joyner*, 140 F.4th at 530.

Plaintiff's disparate treatment claim based on her constructive discharge is a different story—at least as to the efficacy of her comparator evidence.  Recall that Plaintiff alleges that she was constructively discharged after the Board, considering the false accusations of "mismanagement of funds, embezzlement, conflicts of interest, and immigration violations," ECF No. 9, ¶ 26, and the other conduct by directors and staff, "concluded that the environment was too tenuous for [Plaintiff] to be able to lead and move forward," and it "was unwilling to take action

35

to address the behavior of the directors and staff undermining her authority," *id.*, ¶ 17. Of the "three untenable options" offered her—"resign, termination, or mutual separation"—she "resign[ed] under duress." *Id.*, ¶¶ 18, 48. A proper comparator for the claim related to Plaintiff's constructive discharge, then, would have been subjected to similar "extreme treatment" but not pushed out. *See, e.g.*, *Short v. Mando Am. Corp.*, 601 F. App'x 865, 873 n.10 (11th Cir. 2015) (noting in the context of a claim for discriminatory termination that a similarly situated comparator must be "someone outside [the plaintiff's] class who was treated more favorably under the same or similar circumstances"); *Walker v. Regan*, No. 21-cv-312, 2023 WL 6224635, at *7 (E.D. Va. Sep. 22, 2023) (finding that an appropriate comparator for a claim that the plaintiff was discriminatorily constructively discharged when "his employer took certain disciplinary actions against him" because of his "contentious relationship" with colleagues would be another employee who "also had combative relationships" with colleagues) *cf. Foy v. N.Y. State Unified Court Syst.*, 740 F. Supp. 3d 136, 152 (E.D.N.Y. 2024) (noting that an employee outside the plaintiff's class "who faced similar issues . . . but was not terminated" would be a similarly situated comparator). And so, even though at the motion to dismiss stage a plaintiff need not show "that the comparator's circumstances are 'nearly identical' to the plaintiff's in 'all relevant respects,'" *Joyner*, 140 F.4th at 531 (quoting *Joyner*, 2023 WL 6313194, at *5), to survive on a comparator theory Plaintiff herself must not foreclose the possibility that her putative comparators faced similar workplace headwinds. The Amended Complaint does just that when it states that no other Executive Director faced the "extreme treatment" she did and was not forced to resign. ECF No. 9, ¶¶ 12, 26. That assertion establishes that Bravo and Chun-Hoon were *not* similarly situated to Plaintiff with respect to the circumstances surrounding her constructive discharge because neither of them experienced the treatment that spurred the Board to pressure Plaintiff to resign. *Cf. Senese v. Longwood Cent.*

*Sch. Dist.*, 330 F. Supp. 3d 745, 768 (E.D.N.Y. 2018) ("The [p]laintiff's failure to identify a similarly situated employee who faced similar accusations, but [was] permitted by the [employer] to remain employed precludes an inference of discrimination."). As to the disparate impact claim, then, the "difference[] between plaintiff[] and [these] would-be comparators overwhelm[s] their similarities, negating any inference of discrimination." *Johnson*, __ F. Supp. 3d at __, 2026 WL 879522, at *16.

But there are ways other than comparator evidence to raise an inference of discrimination. At the summary judgment stage—when the burden is "substantially more onerous than the pleading burden," *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir, 2017)— evidence that the defendant "deviat[ed] from established procedures or criteria" can "evince[] an illicit motive," *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). Here, Plaintiff has alleged just that, asserting that the Board of Directors "did not follow established personnel policies" by failing to investigate her claims of discrimination and failing to prevent the alleged hostile actions of her colleagues that ultimately led to her constructive discharge. ECF No. 9, ¶ 28; *see also id.*, ¶ 37; *Ibrahim v. Rubio*, No. 24-cv-2915, 2025 WL 3718637, at *3 (D.D.C. Dec. 23, 2025) (finding that the plaintiff's claim of discrimination survived a motion to dismiss where, although "sparse on detail," it alleged that "[a]t various points in [the] disciplinary spiral" that culminated in his discharge, his employer "deviated from its own written policies"); *Fisher v. Bessent*, No. 23-cv-329, 2025 WL 2779791, at *9 (D.D.C. Sep. 30, 2025) ("[T]he Court may consider 'prior acts as background evidence in support of a timely claim[.]'" (quoting *Morgan*, 536 U.S. at 114)). Additionally, a plaintiff can state a claim of discrimination by "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a[n] [illegal] discriminatory criterion." *Webster v.*

37

*U.S. Dep't of Energy*, 267 F. Supp. 3d 246, 255 (D.D.C. 2017) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015)).  For example, in *Fosque*, the plaintiff alleged that he was falsely accused of sexually assaulting a colleague at work and terminated on that basis.  2026 WL 1073049, at *1.  The court found that, even without appropriate comparators, his disparate treatment claim survived a motion to dismiss because he alleged "facts to support his allegation that the sexual assault report—the purported basis for his termination—was willfully untrue."  *Id.* at *3.  Here, Plaintiff also alleges facts to support her allegation that the accusations against her were untrue—the Board of Directors itself found them to be so, but nevertheless forced her out.  At this early stage, where the burden "of pleading the 'because of' element is 'not onerous,'" *Keith*, 2022 WL 3715776, at *3 (quoting *Doe #1*, 554 F. Supp. 3d at 102), those allegations are sufficient to "nudge" Plaintiff's disparate treatment claim "across the line from conceivable to plausible," *Fosque*, 2026 WL 1073049, at *2 (quoting *Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024)).[20]

### 3.    Territorial Limits of the DCHRA

"The DCHRA is not extraterritorial; it does not and cannot secure an end to discrimination in jurisdictions outside of the District of Columbia."  *Cole*, 845 F. Supp. 2d at 284.  Both parties acknowledge that the reach of the statute "turns on whether (1) any of the acts that she alleges to be discriminatory took place in the District, or (2) the effects of any discriminatory acts that took

---

[20] In support of her causation argument, Plaintiff cites *Holcomb v. Powell*, 433 F.3d 889, 897–99 (D.C. Cir. 2006), asserting the D.C. Circuit found there that "allegations of harsher treatment and heightened scrutiny of [a] Black employee and [a] mixed-race couple [were] sufficient to infer discriminatory motive."  ECF No. 16 at 16.  As Defendant points out, that is an inaccurate characterization of the case.  *See* ECF No. 17 at 10.  In *Holcomb*, the plaintiff alleged "discrimination against her on the basis of race when the corporation failed to select her for a promotion."  *Holcomb*, 433 F.3d at 893.  To support her theory that the failure to promote was discriminatory, the plaintiff "attempt[ed] to establish not only that she [was] significantly better qualified than [the individual who was promoted], but also that her employer substantively misstated her qualifications."  *Id.* at 897.  The court found her evidence *insufficient* to allow an inference of discrimination.  *See id.* at 899 ("In sum, Holcomb has failed to produce any evidence . . . that would permit a reasonable jury to infer discrimination.").  And, although the plaintiff was a "Black employee," there is no reference to a "mixed-race couple" in the decision.  Plaintiff is cautioned that further mischaracterizations of caselaw may warrant sanctions—a warning that applies to Defendant, as well.

38

place outside the District were felt in the District."  ECF No. 15 at 4; *see* ECF No. 16 at 10 (noting that the statute reaches cases "where the alleged discriminatory acts occurred in the District or where the effects of the discriminatory acts were felt in the District" (internal quotation marks omitted)); *see also Kambala v. Checchi & Co. Consulting, Inc.*, 280 F. Supp. 3d 131, 138 (D.D.C. 2017) ("A discrimination claim can arise under the DCHRA when *either* the discriminatory employment decision was made in the District of Columbia *or* the effects of that discriminatory decision were felt in the in the District." (citing *Monteilh v. AFSCME,* 982 A.2d 301, 304–05 (D.C. 2009))).  As long as Plaintiff alleges either a discriminatory act or a discriminatory effect in the District, her hostile work environment and disparate treatment claims survive.

As noted above in Section III.B.2, Plaintiff has alleged that the hostility that she faced at work and her constructive discharge caused her reputational harm in the District.  That reputational harm undergirds both her hostile work environment claim and her disparate treatment claim.[21] Defendant does not contend that such harm is an insufficient effect under the statute.  Instead, it argues that her allegation of harm is "entirely speculative," relying on *Thomas v. Sotero Defense Solutions*, 40 F. Supp. 3d 181 (D.D.C. 2014).  *See* ECF No. 17 at 5–6.  In that case, the plaintiff asserted that she was discriminatorily denied promotions by her Virginia-based employer and that the effects of those failures to promote were felt in the District because she was "denied the opportunity to work here."  *Thomas*, 40 F. Supp. 3d at 182, 185.  More specifically, as Defendant describes the case:

> [The plaintiff] attempted to invoke [the] DCHRA . . . by arguing that the positions for which she was discriminatorily passed over "would have" included working in the District "with some frequency," and that they would have involved phone conversations with clients in the District—*i.e.*, that the effects of discriminatory acts in Virginia included the denial of work opportunities in the District.  Therefore,

---

[21] The Court notes that her hostile work environment claim also alleges discriminatory conduct in the District.  *See* Section III.B.2, *supra*.

she argued, the "effects" of the discrimination were felt in the District because she was denied the opportunity to perform work that reached into the District.

ECF No. 17 at 5 (quoting *Thomas*, 40 F. Supp. 3d at 184). The court was unmoved, finding that "the allegation that plaintiff would have worked in the District is pure speculation and unsupported by the complaint," which failed to allege that she "applied for and was denied a position located in the District." *Thomas*, 40 F. Supp. 3d at 185. Defendant maintains that Plaintiff's allegations here suffer from the same deficiency. *See* ECF No. 17 at 6.

That is too crabbed a reading of the Amended Complaint. Plaintiff asserts that, while employed by FVAW, she worked with D.C.-based partners, including "FVAW C4, CLASP, Center for American Progress, National Women's Law Center, . . . MomsRising," and "MotheringJustice." ECF No. 9, ¶ 7. She further alleges that "[t]he effects of the discriminatory, harassing, and retaliatory conduct by [Defendant] have significant impacts for [Plaintiff] in D.C." because "none of the [D.C.]-based partners will hire her, despite [Plaintiff] being qualified." *Id.*, ¶ 20. It is reasonable to infer from the assertion that D.C.-based partners will not hire her that she has applied to and been rejected by at least some of those organizations. *See Nurriddin*, 818 F.3d at 756 (noting that when ruling on a motion to dismiss for failure to state a claim, the court must draw all "reasonable inferences" in favor of the plaintiff). That is, Plaintiff has not merely alleged—as the plaintiff in *Thomas* did—that she was denied positions located outside D.C. that would have sometimes "reached into the District." ECF No. 17 at 5. She has done what the plaintiff in *Thomas* failed to do: alleged that, because of reputational harm from Defendant's discriminatory conduct, her attempts to work for certain D.C.-based organizations have been rebuffed. Accordingly, Plaintiff has sufficiently alleged that the effects of Defendant's discriminatory acts were felt in D.C., which the D.C. Court of Appeals has said is sufficient to come within the protection of the DCHRA. *See Monteilh*, 982 A.2d at 305 ("Either the decision

40

must be made, or its effects must be felt, or both must have occurred, in the District of Columbia."). Accordingly, at this early stage, the Court concludes that the DCHRA reaches both her hostile work environment and disparate treatment claims.

### IV.    CONCLUSION

The upshot of this somewhat intricate opinion is that—other than Plaintiff's free-standing constructive discharge claim, which she has asserted is not intended to be a separate cause of action, *see* ECF No. 16 at 19—each of Plaintiff's claims lives to see another day.  In the absence of any opposition from Defendant, Plaintiff's request to engage in jurisdictional discovery as to her retaliation claim is granted.  And Plaintiff's allegations of a hostile work environment and of disparate treatment with regard to her constructive discharge by the Board of Directors meet the relatively low standard to survive a motion to dismiss for failure to state a claim.  To be sure, Defendant "might very well rebut [Plaintiff's] claim[s] on summary judgment.  But that is for discovery to uncover."  *Ho*, 106 F.4th at 55.  Accordingly, Defendant's motion to dismiss, ECF No. 15, is **GRANTED** as to the constructive discharge claim, **DENIED** as to Plaintiff's hostile work environment and disparate treatment claims and **DENIED WITHOUT PREJUDICE** as to her retaliation claim (which is viable only as to Plaintiff's constructive discharge by the Board of Directors) to allow Plaintiff to engage in limited, focused discovery related to the Court's personal jurisdiction over Defendant in connection with that claim.  *See* Section III.B.3–4, *supra*.

The Court will issue a separate Order requiring the parties to meet and confer on next steps.

**SO ORDERED.**

Date:  July 6, 2026

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

41